UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE PROVINCE OF ST.
JOSEPH OF THE CAPUCHIN
ORDER, INC., et al.,

      Plaintiffs,

v.

UNITED STATES SECRETARY
OF STATE, et al.,

      Defendants.

Case No. 25-10048
Honorable Shalina D. Kumar
Magistrate Judge Kimberly G. Altman

---

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF NO. 5)**

---

## I. Introduction

Plaintiffs, The Province of St. Joseph of the Capuchin Order, Inc. ("St. Joseph") and Brice Sergius Adyadzem Mumyu ("Mumyu") (collectively "plaintiffs"), brought this action against Marco Rubio, United States Secretary of State, Antony Blinken, Assistant Secretary of United States Bureau of Consular Affairs, Christopher John Lamora, United States Ambassador to Cameroon, and Matthew Taylor, the Consul General of United States Consulate in Yaounde, Cameroon (collectively "defendants"), following the denials of Mumyu's nonimmigrant R-1 religious worker visa

Page **1** of **18**

applications. Plaintiffs allege that the consular officers' decisions were arbitrary and capricious under the Administrative Procedure Act ("APA") and violate their First and Fifth Amendment rights to freedom of religion and due process, respectively. ECF No. 1. Defendants move to dismiss plaintiffs' claims. ECF No. 5. The motion is fully briefed, ECF Nos. 5, 7, 10, and the Court heard oral argument on January 15, 2026. For the following reasons, the Court grants defendants' motion to dismiss.

## II.    Statutory Background

Every alien is presumed to be an immigrant "until he establishes to the satisfaction of the consular officer…that he is entitled to a nonimmigrant status under section 1101(a)(15) of this title." 8 U.S.C. § 1184(b). Section 1101(a)(15) provides for nonimmigrant status if, among other things, the alien is a religious worker. *See id.*; § 1101(a)(15)(R). An alien qualifies as a religious worker (also known as R status) if he: (1) has been "a member of a religious denomination having a bona fide nonprofit, religious organization in the United States for at least the two years immediately preceding the time of application for admission;" (2) seeks to enter the United States for a period not to exceed 5 years to perform religious work; and (3) intends to depart the United States when his visa expires. 8 C.F.R.

§ 214.2(r)(15). The alien bears the burden of proving that he meets the requirements for R status. *See* 8 U.S.C. § 1361.

Typically, the process for obtaining a special immigrant religious worker visa begins with the employer filing a Form I-129 for a temporary visa, also called an "R-1" visa. The R-1 visa allows a nonimmigrant worker to temporarily live and work in the United States, under certain conditions. *See* 8 C.F.R. § 214.2(r). "An approved petition renders the alien eligible to work for the employer . . . [but] is not a visa and will not permit the alien to enter the United States from abroad." *Liberty Church of the Assemblies of God v. Pompeo*, 470 F. Supp. 3d 74, 76 (D. Mass. 2020). An alien with an approved petition must still visit a consulate to obtain a visa to enter the United States. *Id*.

### III.    Procedural and Factual Background

St. Joseph is a § 501(c) religious organization located in Detroit, Michigan. St. Joseph seeks to employ Mumyu, a citizen of Cameroon, as a Religious Brother at its St. Francis Monastery in Milwaukee, Wisconsin. ECF No. 1, PageID.2, ¶ 1. St. Joseph filed a Petition for Nonimmigrant Worker ("I-129 Petition") on behalf of Mumyu, seeking to classify him as a religious worker. *Id.* The United States Citizenship and Immigration Services ("USCIS") approved the I-129 Petition in February 2024. *Id.* Mumyu filed

four nonimmigrant R-1 visa applications with the United States Consulate in Yaounde, Cameroon, and was interviewed four times, with the most recent interview being on September 5, 2024. *Id.* at PageID.3, ¶ 2. Following each interview, the consular officer issued a letter denying Mumyu's R-1 nonimmigrant visa applications. The letters set forth the reasons for the visa denials, stating that Mumyu was "found ineligible for a nonimmigrant visa under Section 214(b) of the United States Immigration and Nationality Act[,]" ("INA") and that "[he] has not demonstrated that [he] ha[s] the ties that will compel [him] to return to [his] home country after [his] travel to the United States." ECF Nos. 1-5–8. Plaintiffs allege that Mumyu brought "clear evidence" supporting his intent to return to Cameroon at the expiration of his visa and the consular officer failed to review this documentation. ECF No. 1, PageID.3, 7, ¶¶ 2, 34; *see also* ECF No. 1-4. As a result of the consular officers' actions, St. Joseph is unable to utilize Mumyu as an R-1 religious worker and Mumyu is unable to have his religious views expressed in the United States. *Id.* at PageID.5, ¶ 17.

Plaintiffs filed a single-count complaint on January 7, 2025, seeking relief under the APA, 5 U.S.C. § 706(1). They allege that the consular officers acted arbitrarily and capriciously in denying Mumyu's visa applications by failing to review the supporting documentation in violation of

the federal statutes, regulations, and procedures governing nonimmigrant visa application adjudications. *Id.* at PageID.8, ¶¶ 41-42. Plaintiffs further claim that the consular officers' actions violated their First Amendment rights to freedom of religion and Fifth Amendment rights to due process. *Id.* As such, plaintiffs ask the Court to issue an order either compelling: (1) the issuance of Mumyu's R-1 visa; or alternatively, (2) consideration of Mumyu's supporting documentation related to his pending application. *Id.* at ¶ 43.

Defendants move to dismiss plaintiffs' complaint, arguing that the Court is barred from reviewing the consular officers' denial of Mumyu's visa application under the doctrine of consular non-reviewability, and that plaintiffs failed to allege an applicable exception to the doctrine. ECF No. 8.

## IV.   Standard of Review

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Golf Village N., LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021) (internal marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts must review Rule 12(b)(6) motions in the light most favorable to plaintiff, accept all of plaintiff's factual allegations as true, and

draw all reasonable references in plaintiff's favor. *Directv, Inc. v. Treesh*, 487 F.3d 471, 479 (6th Cir. 2017).

To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "does not need detailed factual allegations" but must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (internal citations and quotation marks omitted). "To survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. The court "consider[s] the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Weiner v. Klais & Co. Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (noting

documents that a defendant attaches to a motion to dismiss are also considered part of the pleadings if referred to in the complaint and central to the claim).

## V. Analysis

"[T]he admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by" the legislative and executive branches of the federal government and is thus "largely immune from judicial control." *Trump v. Hawaii*, 585 U.S. 667, 702 (2018). This allocation of authority to Congress, which sets the terms for acceptance and denial, and the President and the Department of State, which exercise "considerable discretion in implementing those requirements through U.S. consulates around the world," gave rise to the doctrine of consular non-reviewability. *Baaghil v. Miller*, 1 F.4th 427, 432 (6th Cir. 2021). This doctrine is "a no-trespass rule under which the courts rarely second guess the decisions of consulates to deny or grant applications." *Id*.

If, however, a consulate's decision implicates the constitutional rights of U.S. citizens or lawful permanent residents, a court may review a challenge to the decision. *Id*.; *see Kleindienst. v. Mandel*, 408 U.S. 753, 762-65 (1972). But the court's review is "solely to determine whether the consulate provided a facially legitimate reason for its visa decision." *Id*.; *see*

*also Kerry v. Din*, 576 U.S. 86, 104 (2015) (Kennedy, J. concurring)[1] (quoting *Mandel*, 408 U.S. at 770) (court's limited inquiry is whether the consular provided a "facially legitimate and bona fide reason for its action"). Even a "statutory citation" to the pertinent restriction, without more, suffices. *Baaghil*, 1 F.4th at 432; *(citing Trump*, 585 U.S. at 704); *see also Din*, 576 U.S. at 105. "Absent an affirmative showing of bad faith on the part of the consular officer" denying a visa, *Mandel* instructs courts not to 'look behind' the officer's decision for additional factual details beyond the cited statute. *Din*, 576 U.S. at 105 (quoting *Mandel*, 408 U.S. at 770). "To proceed on a bad faith theory, the plaintiffs must adequately allege bad faith on the part of an executive branch decisionmaker who exercised discretion in denying [the] visa." *Amiri v.Sec' y, Dep't of Homeland Sec.*, 818 F. App'x 523, 529 (6th Cir. 2020).

Defendants argue that the doctrine of consular non-reviewability bars consideration of plaintiffs' claims. Plaintiffs counter that their claims fall within the exception to the doctrine, and are therefore subject to judicial review, because this matter involves the violation of their constitutional

---

[1] No opinion in *Din* commanded a majority of justices, however, a Supreme Court majority endorsed and relied on Justice Kennedy's concurrence in *Trump*, 585 U.S. at 104. *Amiri v. Sec'y Dep't of Homeland Security*, 818 F. App'x 523, 528 (6th Cir. 2020).

rights—namely, their First Amendment right of freedom of religion. ECF No. 7, PageID.488-89. They further argue that the officers' decisions to refuse Mumyu's applications were not based on a "bona fide" reason and done in bad faith. *Id.*

First, the Court cannot review Mumyu's claim under the exception because, as a noncitizen living abroad, he does not have any constitutional rights to assert against defendants. *See Baaghil*, 1 F.4th at 433 ("Noncitizens living abroad do not have any American constitutional rights."); *see also Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433 (2020) ("[I]t is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution."). Accoringly, Mumyu's claim must be dismissed.

St. Joseph, however, is a U.S. citizen and thus may potentially assert a *Mandel* challenge to Mumyu's visa denials. As an initial matter, to the extent that St. Joseph claims to have a procedural due process right in the way Mumyu's visas are adjudicated, those claims are barred. "[T]he Constitution does not ordinarily prevent the government from taking actions that 'indirectly or incidentally' burden a citizen's legal rights." *Dep't of State* v. *Munoz*, 602 U.S. 899, 917 (2024) (citation omitted). Indeed, St. Joseph's

"claim to a procedural due process right in *someone else's* legal proceeding would have unsettling collateral consequences." *Id.* at 916 (emphasis in original). Thus, even though St. Joseph may be suffering harm because of Mumyu's visa denials, "that harm does not give [it] a constitutional right to participate in [its prospective employee's] consular process." *Id.* at 917. *Munoz* clearly states that "*Mandel* does not hold that a citizen's independent constitutional right (say, a free speech claim) gives that citizen a procedural due process right to a "facially legitimate and bona fide reason" for why someone else's visa was denied." *Id.* at 919.

However, St. Joseph may challenge the denials of Mumyu's visa applications to the extent they violate St. Joseph's First Amendment right to have Mumyu's religious views expressed in the United States. *See Nusantara Found., Inc. v. U.S. Dep't of State*, 486 F. Supp. 3d 737, 742-43 (S.D.N.Y. 2020) (collecting cases); *Mandel*, 408 U.S. at 769-70. But even if Mumyu's visa denials violated this right, thus fitting within the non-reviewability doctrine's narrow exception, St. Joseph's claim must still be dismissed because it has not plausibly alleged a non-legitimate or bad-faith reason for the consular officers' decisions. *Mandel,* 408 U.S. at 769–70; *Din*, 585 U.S. at 104; *Baaghil*, 1 F.4th at 432. As defendants argue, the four denial letters issued by consular officers at the U.S. Embassy in Yaounde,

Cameroon provided a "facially legitimate and bona fide reason" for Mumyu's visa denial. *See Mandel,* 408 U.S. at 769–70. Each letter states that Mumyu was "found ineligible for a nonimmigrant visa under Section 214(b) of the U.S. Immigration and Nationality Act." ECF Nos. 1-5–1-8. The letters explain that Mumyu failed to "demonstrate that [his] intended activities in the United States would be consistent with the classification of the nonimmigrant visa for which [he] applied" and his visa application was denied pursuant to Section 214(b). *Id.* The letters further specify that the applied-for visas were denied because Mumyu failed to demonstrate his intention to return to his country after the visa expires. *Id*. The letters spell out that "[a]pplicants usually meet this requirement by demonstrating that they have strong ties overseas that indicate that they will return to their country after a temporary visit to the United States. Such ties include professional, work, school, family, or social links to their home country." *Id.*

Indeed, the consular officers cited Section 214(b) of the INA, 8 U.S.C. § 1184(b), as the statutory ground for Mumyu's visa denial, explained what evidence is typically required to establish nonimmigrant intent, and concluded that Mumyu failed to meet this requirement. *See Nusantara*, 486 F. Supp. 3d at 743–44 (finding citation to Section 214(b) in R-1 visa application denial letter to be a facially legitimate reason for denial). Thus,

Page **11** of **18**

the consular officers proffered a "facially legitimate and bona fide reason" to deny Mumyu's visa applications. *Mandel*, 408 U.S. at 770.

But plaintiffs ask the Court to look beyond the facially legitimate and bona fide decision, arguing that they have made an affirmative showing that the consular officers denied Mumyu's visa applications in bad faith. Specifically, they assert that the consular officers' refusal to review Mumyu's documentary evidence—which they claim supports Mumyu's intention to return to Cameroon once his visa expires—demonstrates bad faith because that refusal violates federal regulations and policy governing visa adjudications. *See* ECF No. 7, PageID.494 (citing 22 C.F.R. § 41.105(a)(1);[2] 9 FAM 403.7-2(3);[3] 9 FAM 403.7-3(B)(1)(a)-(b)).[4]

---

[2] 22 C.F.R. § 41.105(a)(1) states that: "All documents and other evidence presented by the alien, including briefs submitted by attorneys or other representatives, shall be considered by the consular officer."

[3] 9 FAM 403.7-2(3) states that the consular officer "must assess the credibility of the applicant and the evidence submitted to determine qualifications under 101(a)(15)."

[4] 9 FAM 403.7-3(B)(1)(a) states that: "If additional data is needed to supplement the information contained on Form DS-160 so that you can determine the eligibility of an applicant, such data should be obtained by telephone, mail, email, or during the interview." 9 FAM 403.7-3(B)(1)(b) states: "NIV applicants in most categories are not required to submit extensive documentation in support of their cases and you should not routinely require submission of documents. Especially if local documents are unreliable, you should question the utility of requiring them of applicants as they add no value to the NIV adjudication. Remember that the burden of

As previously stated, Justice Kennedy's concurrence in *Din* observes that an "affirmative showing of bad faith" that is "plausibly alleged with sufficient particularity" might justify a more searching review behind a facially legitimate and bona fide reason for denying a visa application. 576 U.S. at 105. But as defendants point out, the Sixth Circuit has not addressed the contours of a bad faith showing,[5] and as such, "[i]t is unclear how much latitude—if any—courts have to look behind a decision that is facially legitimate and bona fide to determine whether it was actually made in bad faith." *Yafai v. Pompeo*, 912 F.3d 1018, 1022 (7th Cir. 2019).

The Court finds the Seventh and Ninth Circuits' interpretations of a bad faith showing instructive. The Seventh Circuit found that a bad faith visa denial could be found if the plaintiff makes an affirmative showing that the "officer was dishonest or had an illicit motive." *Id.* (citing Black's Law Dictionary (10th ed. 2014) (defining bad faith as "[d]ishonesty of belief, purpose, or motive"). The Ninth Circuit construed the bad faith requirement

---

proof for establishing eligibility for the NIV classification lies with the applicant."

[5] Although the Sixth Circuit has stated that in order "[t]o proceed on a bad faith theory, the plaintiffs must adequately allege bad faith on the part of an executive branch decisionmaker who exercised discretion in denying [plaintiff's] visa[,]" *Amiri*, 818 F. App'x at 529, it has yet to elaborate on what constitutes a sufficient allegation of "bad faith."

as imposing a burden to allege *subjective* "bad faith," *i.e.*, that "the consular

official did not in good faith *believe* the information he [or she] had" or that

the "Consulate acted upon information it *knew* to be false." *Bustamante v.*

*Mukasey*, 531 F.3d 1059, 1062–63 (9th Cir. 2008) (emphasis added).

The plaintiffs' complaint alleges that "[t]he consular officer's outright

refusal to review and consider supporting evidence" Mumyu brought with

him to his last interview, "along with the other officers' failure to review and

consider supporting documentation that occurred during the prior three

interviews, is in direct violation of the regulations…and thus affirmatively

shows bad faith on the part of the officer." ECF No. 1, PageID.5, ¶ 16. But

plaintiffs provide no authority suggesting that failure to follow regulations

and the Foreign Affair Manual's ("FAM") guidelines amounts to an

affirmative showing of bad faith, and at least one district court has found

otherwise. *See Waxler v. Tillerson*, 2017 WL 8185853, at *5 (C.D. Cal.

Aug. 11, 2017) (holding that allegations that consular official's visa denial

"violated the precedent of the Board of Immigration Appeals and the

guidelines set forth in the State Department's Foreign Affairs Manual" are

insufficient to support a showing that consular official acted in bad faith).

Indeed, many courts have held that the doctrine of consular non-

reviewability precludes them from reviewing legal errors in the context of a

denied visa application. *Rohani v. Rubio*, 2025 WL 1503950 at *7 (W.D. Wash. May 27, 2025) (citing *Allen v. Milas*, 896 F.3d 1094, 1107-09 (9th Cir. 2018)); *Edae v. U. S. Dep't of State*, 2022 WL 3211760, at *3 (D.D.C. Aug. 9, 2022) (the doctrine of consular non-reviewability applies quite broadly, including to allegations that the consular officer failed to follow regulations); *Al Khader v. Pompeo*, 2019 WL 423141, at *7 (N.D. Ill. Feb. 4, 2019) (quoting *Matushkina v. Nielsen*, 877 F.3d 289, 294 (7th Cir. 2017)) ("[I]n determining whether 'a visa was denied for a bona fide and facially legitimate reason,' the court does 'not look to see whether a consular official properly construed and applied relevant provisions of law.'").

That a consular officer did not accept an applicant's new documents also does not show bad faith. *Cardenas v. United States*, 826 F.3d 1164, 1172 (9th Cir. 2016). "Nor may courts look behind the exercise of executive discretion to deny a visa by examining the weight of the evidence behind that choice." *Rizk v. Stufft*, 795 F. Supp. 3d 17, 27 (D.D.C. 2025) (cleaned up). Lack of supporting evidence for the visa denial alone does not support a claim of bad faith; "[a] plaintiff must show some independent, objectively *bad* behavior—harassment, retaliation, discrimination, or flagrant internal inconsistencies so to raise an inference of malicious intent." *Id*. (emphasis in original). Indeed, the burden to plead sufficient facts with particularity to

raise a plausible inference of subjective bad faith on the part of the denying consular officer is a substantial one. *See Khachatryan v. Blinken*, 4 F.4th 841, 854-55 (9th Cir. 2021).

The *Khachatryan* court determined that the plaintiff met that substantial burden by alleging: (1) that the Embassy persistently and without explanation refused to accept the USCIS's repeated conclusion that the applicant did not commit marriage fraud; (2) that it continued to rely on a prior finding that had been undeniably withdrawn because it was substantively wrong; and (3) that after the third time the USCICS reaffirmed that the marriage fraud finding was unsupported, the Embassy pivoted, and for the first time in the 14 years that applicant had pursued a visa, contended that the applicant had committed a different type of fraud (applying for a visa under a false name) more than 13 years earlier. *Id*. The court acknowledged that the new allegation could simply be an "administrative oversight", as the defendant asserted, "but the overall pattern of troubling behavior over such an extended period of time is enough to raise a *plausible* contrary inference that the consular office acted in subjective bad faith…." *Id*. (citing *Yafai*, 912 F.3d at 1022) (emphasis in original).

Nothing in the complaint here indicates that the consular officers' determination regarding Mumyu's nonimmigrant intent was based on the type of bad behavior that could create the inference of bad faith, i.e., harassment, retaliation, discrimination, or flagrant internal inconsistencies suggesting malicious intent. Indeed, plaintiffs acknowledge that facts here differ from those in *Khachartryan*.

Plaintiffs instead argue that the consular officers' repeated refusals to review documents along with their statements during the interviews—that an officer "did not hear sufficiently important reasons to approve the visa" and that prior visa denials supported denying the current application[6]— constituted bad faith. But, as previously noted, that the consular officers failed or refused to review documents purportedly supporting Mumyu's intent to return to Cameroon after the expiration of the applied-for R-1 visa, without more, does not create a plausible inference of bad faith. *See Cardenas*, 826 F.3d at 1172. Likewise, although the consular officers' comments during the interviews could suggest misapplications of the

---

[6] These assertions were not alleged in the complaint but rather were argued in plaintiffs' brief in opposition to defendants' motion to dismiss. ECF No. 7, PageID.494-95. However, as discussed herein, even if these claims were added to an amended complaint, they would not meet plaintiffs' burden to plead sufficient facts with particularity to raise a plausible inference of bad faith on the part of the denying consular officers.

governing law, regulations, or rules, neither plaintiffs' argument nor the cited statements offer any support that such a misapplication was purposeful or indicative of malicious intent. And, again, reviewing legal errors in the context of a denied visa application is prohibited by the doctrine of consular non-reviewability. *See Rohani*, 2025 WL 1503950 at *7; *Edae*, 2022 WL 3211760, at *3; *Al Khader*, 2019 WL 423141, at *7.

Because the consular officers' decisions to reject Mumyu's visa applications were facially legitimate and bona fide, and the plaintiffs' complaint did not allege sufficient facts with particularity to raise a plausible inference of bad faith on the part of the consular officers, the Court cannot review the denials of Mumyu's visa applications. Accordingly, St. Joseph's claim cannot survive the defendants' motion to dismiss.

## VI. Conclusion

For the above reasons, the Court **GRANTS** defendants' motion to dismiss (ECF No.5). Plaintiffs' complaint is **DISMISSED**. This matter is now closed.

**IT IS SO ORDERED.**

s/ Shalina D. Kumar
SHALINA D. KUMAR
Dated: March 4, 2026                        United States District Judge